IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EPIPHANY SUMMERS,

      Plaintiff,

      v.

CITY OF ATLANTA, and
DETECTIVE RONALD SLUSS,
in his individual capacity.

      Defendants.

CIVIL CASE NO.:

## **COMPLAINT FOR DAMAGES**

COMES NOW Epiphany Summers, a Plaintiff in the above styled action and files this her Complaint for Damages.

This is a civil rights action under 42 U.S.C. § 1983, the First, Fourth and Fourteenth Amendments to the United States Constitution and Georgia law. Epiphany Summers ("the Plaintiff") alleges that her property was illegally and unconstitutionally seized by Defendant Officer Ronald Sluss of the City of Atlanta Police Department. Both defendants – including the City of Atlanta - conspired to

1

deprive this plaintiff of her constitutional rights. Plaintiff also alleges that her property was seized in retaliation for the exercise of her First Amendment rights, and that Defendant City of Atlanta through Detective Ronald Sluss conspired in the illegal seizure, that is the subject of this suit. Finally, Plaintiff alleges that a final policy maker within the City of Atlanta – who at this point remains unidentified - ordered the illegal property seizure as a result of Plaintiff's First Amendment protected activity.

## PARTIES

### 1.

Plaintiff Epiphany Summers is a resident of the State of Georgia, United States citizen, and over the age of eighteen.

### 2.

Defendant Ronald Sluss is a detective employed by the City of Atlanta Police Department. The headquarters of the City of Atlanta Police Department are located at 226 Peachtree St SW, Atlanta GA 30303 in Fulton County, Georgia. Defendant Ronald Sluss may be served at this address. At all times relevant to this lawsuit, Defendant Ronald Sluss acted under the color of law. Defendant Ronald

Sluss is sued in his individual capacity.

3.

Defendant City of Atlanta ("the City") is a political subdivision of the State

of Georgia, which has the capacity to sue and be sued. The City can be served at:

55 Trinity Ave. SW, Atlanta GA 30303. At all times relevant to this lawsuit,

Defendant City of Atlanta acted under the color of law.

4.

All defendants reside in the Northern District of Georgia.

**JURISDICTION AND VENUE**

5.

This case presents a federal question and this Court has subject matter

jurisdiction under 28 U.S.C. § 1331.

6.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an

action to redress a deprivation of rights guaranteed by the United States

Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an

action to redress a deprivation of rights guaranteed by the laws and the

Constitution of the State of Georgia.

7.

This Court has personal jurisdiction of the Defendants under 28 U.S.C. §

1367 and GA. CONST., art. I, § 1, ¶¶ V, XIII.

8.

Venue is proper in the Northern District of Georgia under 28 U.S.C. §

1391(b) because all actions complained of occurred within the boundaries of this

judicial district and Defendants reside within this district.

9.

All of the parties herein are subject to the jurisdiction of this Court.

10.

Attorney's fees are authorized under 42 U.S.C. § 1988.


## FACTUAL ALLEGATIONS

11.

On November 15, 2024 Defendant Sluss applied for two warrants with

regards to property belonging to Plaintiff Epiphany Summers – namely a warrant authorizing a search and seizure of Plaintiff's personal vehicle: 2020 Blue Hyundai Kona and a warrant authorizing a search and seizure of Plaintiff's personal cell phone. Defendant Sluss did so because he suspected that Plaintiff Summers opposed the construction of police training facility in Atlanta also known as Cop City and also suspected that Plaintiff's vehicle was in the vicinity of a location where flyers in opposition of Cop City were posted. The location from previous sentence is in downtown Atlanta and is frequently and commonly used to post fliers on variety of topics ranging from business advertisements, religious postings, political, art and other messages. No damage whatsoever was caused by the suspected posting of fliers related to Cop City.

12.

Despite the fact that no damage has been caused by the fliers Defendant Sluss falsely averred under oath in his warrant applications that said warrants were applied for to gather evidence of the crime of Criminal Damage to Property in the 2nd Degree (OCGA 16-7-23) and that there was property damage in the amount of $500.00 or more. Defendant Sluss also made other false statements in his warrant

affidavit.

13.

Said warrants were applied for in accordance with the City of Atlanta "Cop City Policy" which has been articulated and developed at the highest levels of City's leadership and actively promoted by the Mayor and Chief of Police. According to this policy persons suspected to oppose construction of police training facility are to be heavily surveilled – regardless of whether such surveillance is legal or illegal, their property is to be seized without regards of legality of such seizures (as evidenced by the present case) and they are to be arrested for pretextual offenses if the opportunity for such arrests presents itself. The goal of the City of Atlanta's "Cop City Policy" is to control the narrative such that the government sponsored narrative is promoted – but the individuals opposing that narrative are being intimidated using tactics such as surveillance, property seizure and pretextual arrests.

14.

In furtherance of this "Cop City Policy" the City through its police department has detained and intimidated journalists suspected of holding views in

opposition to Cop City (See Watchulonis v. City of Atlanta 1:23-cv-2204-TCB),

arrested individuals participating in peaceful protests (Gadomski v. City of Atlanta

(Case 1:23-cv-04036-TWT) and Dixon v. City of Atlanta (Case: 1:24-cv-02061-

JPB)) and surveilled countless others – including participants of a peaceful

candlelight vigil on January 20th, 2023 in Little Five points where the City officers

recorded license plates of all participants in the vigil. In addition – the City –

through its high ranking officer Jessica Bruce (Currently holding the title of

Deputy Chief of Police) urged officers of Georgia State University Police

Department in July 2022 to fabricate charges against Stop Cop City protesters.

(See Aira v. City of Atlanta 1:24-cv-03344-TRJ).

15.

A thorough review of the City of Atlanta "Cop City Policy" is conducted in

the complaint pending in this Court in the case of Marsicano v. Long 1:25-cv-

00944-TRJ. Plaintiff in the present complaint adopts by reference the allegations

related to "Cop City Policy" from Marsicano v. Long case in order to save space

and cut down on the verbosity of the present Complaint.

16.

On November 15, 2024 Defendant Sluss – together with other City of
Atlanta Officers at his direction – arrived at the apartment complex where Plaintiff
lives. Without notifying the Plaintiff Defendant Sluss seized plaintiff's car and
removed it from the premises.

17.

On Monday, November 18th, 2024 Plaintiff returned from a work related trip.
Plaintiff noticed that her car was missing and on the next day Plaintiff stopped by
the leasing office to see if security cameras would reveal what happened to the car.
After not being able to see the security footage Plaintiff called the police. In
response to Plaintiff's call approximately ten City of Atlanta Police Officers
showed up at the Plaintiff's apartment complex together with Defendant Sluss.
Defendant Sluss stated to Plaintiff that he knew she was going to call them.
Defendant Sluss then stated that a warrant for seizure of Plaintiff's car has been
issued because her car was spotted in the vicinity of the location where above
mentioned fliers were posted. Defendant Sluss proceeded to hand Plaintiff the
warrant but the warrant did not include the warrant affidavit.

18.

Defendant Sluss then informed Plaintiff that he also has a warrant for seizure of her phone and demanded that Plaintiff turn her phone over to him. Plaintiff complied. Defendant Sluss also handed Plaintiff the warrant for the phone but this warrant likewise did not include the warrant affidavit.

19.

Defendant Sluss kept the phone and the car for more than three months - until February 21, 2025 – at which time he returned the phone and the car back to the Plaintiff.

20.

No charges have ever been filed against Plaintiff for anything related to the seizure of the car or the phone and upon information and belief no charges have ever been filed against anyone else related to any events that allegedly formed basis for the seizure of the car or the phone.

21.

There was no probable cause for either of the warrants to issue, and both warrants were palpably overbroad.

22.

Ms. Summers was illegally deprived of her property for more than three

months in violation of the Fourth Amendment. Said deprivation was accomplished

through false statements of Defendant Sluss in his warrant affidavits and was done

in retaliation for Ms. Summers First Amendment Protected conduct – specifically

for expressing her view in opposition of the police training facility.

23.

The warrants were also issued for improper purposes, to wit: retaliating

against Plaintiff and intimidating Plaintiff for exercising her First Amendment right

to criticize the construction of police training facility, and to gain access to

Plaintiff's home and digital life to see if any embarrassing information might be

found to slander Plaintiff.

24.

The warrants were overbroad as they contain no limit as to time - meaning

that officers can search Plaintiff's files for items predating the flyering incident or

even the Cop City controversy itself.

25.

The warrants contain no limit as to subject matter, meaning that officers can search Plaintiff's files for medical records, bank statements, messages with family members, or any other thing in her digital life.

26.

The warrants contain no limit as to involved persons, meaning that officers can read Plaintiff's communications with her mother, her attorney, her co-workers, or anyone else, without regard to whether or not they have anything to do with the Stop Cop City controversy.

27.

The warrants contain no limit as to media, meaning that officers can listen to Plaintiff's voicemails, pore through her medical records, watch her personal videos, and view her photos - even though officers have no probable cause that her voicemails, medical records, videos, or photos would shed any light on who was in the vicinity of the alleged Stop Cop City flyering location.

**COUNT I**
**42 U.S.C. § 1983: Unlawful Seizure and search of property in violation of the**
**Fourth Amendment**
**(As to Defendants Sluss)**

28.

Paragraphs 1 through 27 are hereby re-alleged as if fully pled herein.

29.

The conduct of Defendant in causing and procuring the seizure and search of

Plaintiff's property without arguable probable cause constituted an unreasonable

seizure and search of her property in violation of the Fourth Amendment.

30.

The law being clearly established in 2024 that an officer of the state cannot

cause property to be seized without arguable probable cause, Defendant is not

entitled to qualified immunity.

31.

The warrants were issued without probable cause or arguable probable cause

to believe that any device belonging to Plaintiff would have any information about

the criminal offenses of criminal damage to property or that Plaintiff's vehicle

would yield any such information.

32.

A reasonable law enforcement officer would know and Detective Sluss did indeed know that posting flyers he suspected Plaintiff of doing did not cause any damage and Defendant Sluss knew that posting flyers is otherwise protected speech under the First Amendment.

33.

A reasonable law enforcement officer would know that a warrant for all items on various electronic devices without any restriction as to time, media, subject, or persons involved is overbroad and constitutionally unreasonable.

34.

Defendant's seizures and searches were pursuant to an impermissible "general warrant."

35.

Defendant's seizures and searches were further unreasonable because there was no objective reason to suspect that Plaintiff did anything criminal.

**COUNT II**
**42 U.S.C. § 1983: Retaliation in violation of First and Fourth Amendments**
**(As to Defendant Sluss)**

36.

Paragraphs 1 through 27 are hereby re-alleged as if fully pled herein.

37.

Defendant's seizure and search of Plaintiff's electronic devices and vehicle was done in retaliation for her protected speech related to the Cop City Controversy – a political debate of great public concern and national proportions.

38.

Never before has the Atlanta Police Department or its officers executed a search warrant for personal cell phone and personal vehicle belonging to any individual – much less held it for three months – when that individual was suspected of nothing more than posting fliers – unless the subject matter of the fliers was related to the Cop City controversy.

**COUNT III**
**Municipal Liability**
**(As to Defendant City of Atlanta)**

39.

Paragraphs 1 through 27 are hereby re-alleged as if fully pled herein.

40.

The City is liable under the Monell doctrine because there was a decision by a final policy maker to seize and search Plaintiff's property or to conduct searches and seizures in cases such as Plaintiff's – namely in cases related to the Cop City controversy.

41.

The City has a long history of not adequately training its officers when it comes to protecting and respecting citizens' First Amendment rights which includes violating citizens' rights to film the police that ultimately resulted in a contempt order against the City in 2015.

42.

The City also routinely arrests protesters under the pretext of violating pedestrian in the roadway laws with numerous instances of such arrests occurring

during 2020 protests, a mass arrest on January 6, 2021 that is the subject of a

pending lawsuit before this Court (Baker v. City of Atlanta et al. 1:21-cv-04186-

MLB) where 19 protesters were corralled and arrested for pedestrian in the

roadway within minutes of starting to protest, and another mass arrest in May of

2022 when a number of Stop Cop City protesters were arrested in Inman Park and

also charged with pedestrian in the roadway. Baker case involved an order given by

a high ranking officer to arrest all protesters on the scene. There is an official

policy or directive by final policy maker(s) within the City of Atlanta to engage in

practice of arresting protesters under the pretext of violating pedestrian in the

roadway laws and the City – if not deliberately promoting this policy – is at the

very least deliberately indifferent to it. While arresting individuals for protesting is

not exactly the same as seizing property of individuals holding certain political

beliefs – it is evidence of the City's treatment of individuals holding First

Amendment protected beliefs that are not in alignment with the City's approved

views.

43.

    The above referenced Inman Park mass arrest from May of 2022 occurred on

16

May 14, 2022 in Inman Park – a public park. This mass arrest of approximately 15 individuals followed a different "Stop Cop City" Protest and was a carefully executed action where only those protesters who were deemed more vocal / more dedicated to the cause were targeted out of a much larger group of protesters. Those protesters were ultimately arrested in a public park where they could not have possibly been violating pedestrian in the roadway laws. Indeed all but one of the May 14, 2022 arrestees had their charges dismissed, and the sole remaining one is currently awaiting an accusation in the State Court of Fulton County but has not been accused to date.

44.

Related to the May 14, 2022 arrests and on the same day were the arrests of Melanie Silverstein, Ahley Dixon and Ryan Michael Seal. Dixon and Silverstein were arrested on a public sidewalk while walking home from the protest and charged with pedestrian in the roadway. Dixon and Silverstein were singled out by Major Jeff Cantin because one of them was carrying a "Stop Cop City" sign. Dixon and Silverstein were arrested by Major Cantin who upon information and belief was assisted by other officers in arresting the two. Dixon's and Silverstein's

17

charges were likewise dismissed.

45.

Ryan Michael Seal was a reporter who was arrested in Inman Park on May

14, 2022 on pedestrian in the roadway charges and was transported to the City of

Atlanta Detention Center. There Mr. Seal was released without charges. However,

his reporter's notebook was confiscated and never returned. Upon information and

belief Mr. Seal was arrested because he was deemed to be a part of the "Stop Cop

City" movement and because it was expected that his notebook would yield

valuable intelligence about the movement. In other words Mr. Seal was arrested

because of his First Amendment protected activities and in retaliation for those

activities.

46.

The complaint of Michael Watchulonis in Watchulonis v. City of Atlanta

1:23-cv-2204-TCB - yet another case pending in this Court – alleges First

Amendment violations surrounding the detention of Mr. Watchulonis – a reporter –

where Mr. Watchulonis was interrogated by above mentioned Major Jeff Cantin

and a GBI agent Mike Carter, threatened with arrest if he does not delete his

footage, and then released without charges. Said complaint contains a long list of First Amendment violations by the City of Atlanta of the right to film described therein which are hereby incorporated by reference in order to save space and cut down on the verbosity of the present complaint.

47.

Defendant Sluss acted at the direction of a final policy maker within the City of Atlanta and in accordance with above defined Cop City Policy. Defendant Sluss is a detective within the City of Atlanta and has regular day to day conversations with high ranking officers with the City of Atlanta as well as final policy makers as to how to implement the Cop City Policy. Those final policy makers encouraged and approved Defendant Sluss' actions complained of in this complaint.

**COUNT IV**
**42 U.S.C. § 1983: Conspiracy to violate constitutional rights**
**(As to all Defendants)**

48.

Paragraphs 1 through 27 are hereby re-alleged as if fully pled herein.

49.

Defendant Sluss acted at the direction of a final policy maker within the City of Atlanta and in accordance with above defined Cop City Policy. Defendant Sluss is a detective within the City of Atlanta and has regular day to day conversations with high ranking officers with the City of Atlanta as well as final policy makers as to how to implement the Cop City Policy. Those final policy makers encouraged and approved Defendant Sluss' actions complained of in this complaint.

50.

Defendant Sluss and Defendant City of Atlanta jointly and in concert engaged in numerous past instances of property seizures without probable cause that preceded the incident complained of in this complaint. Those instances include vehicles being towed from a public parking lot in Intrenchment Creek Park area (the now closed Weelaunee Park parking lot) under the pretext of being abandoned and search of those vehicles as well as search and seizure of dozens of electronic devices supported by little more than a suspicion of trespass and the fact that the owners of those devices held certain views about Cop City.

51.

The seizure of property in the present case is a continuation of a long standing and long existing Cop City Policy and more specifically a continuation of a long practice of property seizures without probable cause related to the Cop City Controversy that has been performed not only by Defendants Sluss and City of Atlanta but also by other agencies that are members of Joint Task Force regarding Cop City. It is this mutual collaboration among defendants in this case and other agencies that is the vehicle for the conspiracy in this case.

**DAMAGES**

52.

Paragraphs 1 through 51 are hereby re-alleged as if fully pled herein.

53.

As a direct and proximate result of the above described conduct of Defendants, Plaintiff was unreasonably and unlawfully deprived of her property without probable cause and as a retaliation for exercising her First Amendment rights, had her property searched, was subject to physical and mental suffering and

emotional distress as a result - that is expected to continue into the future, and was forced to incur other economic and non-economic losses for which Defendants are liable to Plaintiff in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

54.

The aforementioned misconduct of Defendants rose to such a level of bad faith, willfulness, intent to injure, malice, and reckless disregard as to authorize the imposition of punitive damages against each one of them.

55.

Plaintiff is also entitled to recover reasonable attorney's fees and expenses of litigation pursuant to 28 U.S.C. §1988.

**WHEREFORE**, Plaintiff demands the following:

a) That this action be tried by a jury;

b) That judgment be entered in favor of Plaintiff and against each Defendant for nominal, special, compensatory and punitive damages for each violation of the Plaintiff's constitutional rights in an amount to be determined by the enlightened

conscience of fair and impartial jurors;

c) That the Court Order Defendants to produce all information that was extracted, items removed or alterations made to Plaintiff's phone or vehicle and for Defendants to destroy all copies of such information and return all items and data to the state it was before the search;

d) That the Court Order that information obtained through the search of Plaintiff's property cannot be used in any other investigation;

e) That Plaintiff be awarded attorney's fees and reasonable expenses of litigation;

f) That all costs of this action be taxed against Defendants; and

g) That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 23rd day of April 2025.

/s/Drago Cepar, Jr.
Drago Cepar, Jr.
Georgia Bar No. 142362

1900 The Exchange, Suite 490
Atlanta, Georgia 30339
Phone: 770-940-3233
Fax: 770-874-2987
dcepar@gmail.com

23