IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EPIPHANY SUMMERS,

    Plaintiff,

       v.

CITY OF ATLANTA, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:25-CV-2225-TWT

## OPINION & ORDER

This is a civil rights action. It is before the Court on the Defendant City of Atlanta's Motion to Dismiss [Doc. 12] and the Defendant Ronald Sluss's Motion to Dismiss [Doc. 13]. For the following reasons, both motions are GRANTED.

## I.   Background[1]

This action arose from Defendant Ronald Sluss's November 2024 application for two search warrants for property belonging to Plaintiff Epiphany Summers—a 2020 Blue Hyundai Kona and an iPhone. (Am. Compl. ¶ 11). Sluss's warrant applications related to his suspicions that the Plaintiff opposed the construction of a police training facility in Atlanta, known as Cop City, and that she had participated in posting flyers in opposition to its

---

[1] The Court accepts the facts as alleged in the [First Amended] Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

construction. (*Id.*). According to the Plaintiff, posting the flyers caused no damage, but Sluss "falsely averred under oath in his warrant applications" that the warrants were for the collection of evidence of the crime of second-degree criminal damage to property, including property damage of $500 or more. (*Id.* ¶ 12). The Plaintiff alleges that the warrants were applied for in accordance with the City of Atlanta's "Cop City Policy," under which

> persons suspected to oppose [the] construction of [the] police training facility are to be heavily surveilled—regardless of whether such surveillance is legal or illegal, their property is to be seized without regards of legality of such seizures (as evidenced by the present case) and they are to be arrested for pretextual offenses if the opportunity for such arrests presents itself.

(*Id.* ¶ 13).

The Plaintiff alleges that, in accordance with this policy, Sluss arrived at her apartment complex on November 15, 2024, and had her car removed from the premises. (*Id.* ¶ 16). On November 18, the Plaintiff returned from a work trip to find her car was missing. (*Id.* ¶ 17). In response to the Plaintiff's phone call, Sluss arrived at the Plaintiff's apartment complex, along with ten City of Atlanta police officers. (*Id.*). Sluss informed the Plaintiff that search warrants were issued for her car and phone because her car had been spotted in the vicinity of a location where Cop City opposition flyers were posted. (*Id.* ¶¶ 17-18). Sluss gave the Plaintiff copies of the warrants but did not give her the affidavits given in support of the warrants. (*Id.*). Nonetheless, she "knows

2

that there must have been false statements in the affidavits as she never engaged in any criminal damage to property and there could not have been any evidence of same—let alone sufficient evidence for probable cause." (*Id.* ¶ 12). The Plaintiff complied and turned over her phone to Sluss at that time. (*Id.* ¶ 18). Sluss retained the Plaintiff's car and phone for more than three months before returning them, but no charges were ever filed against her. (*Id.* ¶¶ 19-20).

The Plaintiff brought this action against Defendant Sluss in his individual capacity, and the City of Atlanta ("the City"), asserting claims for: (1) Fourth Amendment violation, under 42 U.S.C. § 1983 (against Sluss); (2) First Amendment retaliation, under § 1983 (against Sluss); (3) municipal liability as a final policy maker (against the City); (4) municipal liability for failure to train (against the City); and (5) conspiracy to violate constitutional rights under § 1983 (against both Defendants). (*Id.* ¶¶ 28-63). The Plaintiff seeks compensatory damages, punitive damages, and attorneys fees. (*Id.* ¶¶ 64-67). Both Defendants have moved to dismiss, and those Motions are presently before the Court. [Docs. 12, 13].

## II.  Legal Standards

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may

survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III. Discussion

### A. Sluss's Motion to Dismiss [Doc. 13]

As an initial matter, the Court's consideration of the Defendants' Motions to Dismiss necessitates consideration of the warrants and warrant affidavits at issue. The Defendants failed to attach the warrant affidavits to their Motions to Dismiss, and instead attached only the warrants themselves.

4

Later, in reply, the Defendants attached the warrants with the affidavits for the first time. The Plaintiff objected to the Court's consideration of these documents in response to the Defendants' attempts to seal the documents, for the Plaintiff's privacy. (*See generally*, Pl.'s Resp. in Opp'n to Mot. to Seal, Doc. 23). There, the Plaintiff argued that the Defendants had improperly sought to provide the documents for the first time as an attachment to their reply brief, which did not allow her an opportunity to respond, thus prejudicing her. (*See id.* at 3-5).

The Court rejects the Plaintiff's concerns and will consider the warrants and accompanying affidavits. The rule disallowing the introduction of argument for the first time in a reply brief is a discretionary one, rather than a mandatory one, and it is aimed at encouraging judicial efficiency. The Plaintiff's Amended Complaint makes multiple references to the documents and all of her claims, but particularly her Fourth Amendment claim, hinge on the warrants and the warrant affidavits. (*See, e.g.*, Am. Compl. ¶¶ 11-13, 17-18, 21-27). While the Defendants' decision not to disclose the full warrants and affidavits to the Plaintiff and the Court until their reply briefs was ill-advised, it does not prevent the Court from considering them at this stage where the documents are central to the Plaintiff's claims and their authenticity has not been disputed. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) ("[A] court may properly consider a document not referred to

or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged."). Nor would judicial efficiency be promoted by considering the Motions without the warrant affidavits at issue. The Plaintiff could have sought leave to file a surreply to address the warrant affidavits further, and the Court would have granted that request. But she did not do so, so the Court proceeds with its analysis on the briefs before it.

In her first, claim, the Plaintiff contends that her Fourth Amendment rights were violated when her property was seized pursuant to warrants that lacked probable cause. (Am. Compl. ¶¶ 29-35). Sluss asserts that the warrants were properly supported and facially valid, and therefore, the Plaintiff's rights were not violated by the execution of the warrants. (Def. Sluss's Mot. to Dismiss, at 7-13). Sluss also asserts that he is entitled to qualified immunity. (*Id.* at 17-20). Because the Court finds that Sluss is entitled to qualified immunity on all of the Plaintiff's claims against him, the Plaintiff's claims fail. However, because Sluss's entitlement to qualified immunity hinges on whether the warrants at issue were valid, the Court must first wade into the Plaintiff's Fourth Amendment arguments.

### 1. Fourth Amendment Claim (Count I)

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their

conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quotation marks omitted). "A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority when he took the allegedly unconstitutional action." *Id.* at 1297. Once that is shown (and it is not challenged here), "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct." *Id.* The Court has discretion to decide these issues in either order depending on the circumstances, but the Plaintiff must demonstrate both prongs to survive a qualified immunity defense. *See Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017).

Where an officer seeks qualified immunity based on his application for and execution of a warrant, the appropriate test is "whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). With regard to

allegations of false statements, the Supreme Court in *Franks v. Delaware* established the right to be free from officers making perjurious or recklessly false statements in support of a warrant. 438 U.S. 154, 165-66 (1978). In so holding, "[t]he Court made clear that statements made in support of a warrant need not actually be true, but they needed "to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Carter v. Gore*, 557 F. App'x 904, 907-08 (11th Cir. 2014) (citing *Franks*, 438 U.S. at 166). In applying this rule to qualified immunity cases, the Eleventh Circuit has explained that

> "[a]n officer loses qualified immunity if the plaintiff can prove that the officer perjured himself—that is, put forth information he did not believe or accept as true—in order to obtain a search warrant. An officer does not lose qualified immunity, however, if all the plaintiff can prove is that the officer made recklessly false statements in order to obtain a search warrant."

*Id.* at 908 (citing *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994)).[2] Nonetheless, the Court's inquiry must begin with "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of

---

[2] The Court notes that *Kelly* involved a decision at the summary judgment stage. However, *Carter* was decided on a motion to dismiss.

supporting reasons." *Id.*

The Fourth Amendment requires a search warrant to state with particularity "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. But this requirement is applied with a "practical margin of flexibility," and "the property description need only be as specific as the circumstances and nature of activity under investigation permit . . . [a] warrant does not have to be elaborate." *United States v. McCall*, 84 F.4th 1317, 1327 (11th Cir. 2023). In the age of smartphones and digital media, the Eleventh Circuit has identified two general types of limitations to particularize a warrant:

> The first is narrowing the search based on the subject matter of the data. For example, a warrant may limit investigators' search of communications data to only communications with known or suspected co-conspirators. The second is a temporal limitation. Officers can narrow their search by requesting data only for the time when an individual is suspected of planning or participating in criminal activity.

*Id.* (citation modified). The Eleventh Circuit further recognized that because the same content can be stored in different formats, "a subject-based limitation may sometimes be so broad as to be meaningless." *Id.* On that basis, it held that a time-based limitation is the preferred method for limiting the scope of a search of a cloud-based device. *Id.* "By narrowing a search to the data created or uploaded during a relevant time connected to the crime being investigated, officers can particularize their searches to avoid general rummaging. Cloud or

data-based warrants with a sufficiently tailored time-based limitation can undermine any claim that they are the internet-era version of a general warrant." *Id.* at 1328 (citation modified). In the context of qualified immunity, "[g]iven that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Signature Pharm., Inc. v. Wright*, 438 F. App'x 741, 744 (11th Cir. 2011) (citing *Groh v. Ramirez*, 540 U.S. 551, 563 (2004)).[3]

The Court turns first to the Plaintiff's challenge to probable cause in the underlying warrant affidavits. The Plaintiff alleges that Sluss must have lied in his warrant application because "she never engaged in any criminal damage to property and there could not have been any evidence of same," since the crime alleged was posting flyers to a building. (Am. Compl. ¶¶ 11-12 ("No damage whatsoever was caused by the suspected posted of fliers."). More specifically, she alleges that "Defendant Sluss provided knowingly false information to a judicial officer issuing a warrant (including but not limited to misrepresenting that [the] crime of criminal damage to property had

---

[3] The Court pauses to note both parties' reliance on several Georgia Supreme Court cases in support of their arguments. State court case law interpreting United States Supreme Court precedent and the United States Constitution is both inapplicable and unpersuasive here, where the claims were brought in federal court, under a federal statute, and arising out of alleged violations of the United States Constitution. Thus, the Court considers only the parties' citations to federal cases.

10

occurred)." (*Id.* ¶ 31). She essentially alleges that absent Sluss's false statements, the warrants lacked probable cause. The Plaintiff has not alleged that Sluss was acting outside the scope of his discretionary authority in procuring the warrants. (*See* Pl.'s Resp. in Opp'n to Def. Sluss's Mot. to Dismiss, at 19-20). Thus, unless the Plaintiff has alleged facts establishing that Sluss violated her Fourth Amendment rights, Sluss is entitled to qualified immunity. *See Gates*, 884 F.3d at 1296-97. If Sluss did indeed knowingly provide false information to procure the warrants, he is not entitled to qualified immunity. *See Carter*, 557 F. App'x at 908.

Reviewing the warrant affidavits in question here, even construing the facts in the Plaintiff's favor, the Plaintiff has fallen short of establishing that an objectively reasonable officer in Sluss's shoes would not have applied for the warrants. *See Malley*, 475 U.S. at 345. The warrants and accompanying affidavits alleged that the Plaintiff was suspected of having committed the crime of criminal damage to property in the second degree, in violation of O.C.G.A. § 16-7-23. [Doc. 24 ("Warrants") at 3, 6, 15, 18]. That statute makes it a crime to "[i]ntentionally damage[] any property of another person without his or her consent [where] the damage thereto exceeds $500.00." O.C.G.A. § 16-7-23(a)(1). In support of that belief, Sluss averred that a specific building had been postered with Stop Cop City flyers, that videos of the incident had been posted on social media, and that surveillance video showed the Plaintiff's

vehicle, identified by its tag number, arrive at the postering location. (Warrants at 8-9). Sluss averred that the video showed individuals getting out of the vehicle with posters, buckets, paint rollers, and other items and walk towards the building in question. (*Id.*). Sluss also included a still surveillance image of a figure, suspected to be the Plaintiff, recording the postering on a cell phone. (*Id.* at 12). Sluss averred that a total of sixty-six posters were glued to the building and that the building tenant was contacted, who informed him that the posters were placed without consent. (*Id.* at 11-12). In the Court's view, these allegations support an objectively reasonable officer's application for search warrants based on probable cause to believe the Plaintiff's phone and car had been used in the commission of the alleged crime and would reveal evidence that the crime of criminal damage to property in the second degree had been committed. *McCall*, 84 F.4th at 1324 ("Probable cause requires a fair probability that contraband or evidence of a crime will be found in a particular place." (citation modified); *see also United States v. Mathis*, 767 F.3d 1264, 1276 (11th Cir. 2014) ("We have explained that an affidavit should establish a connection between the defendant and the property to be searched and a link between the property and any criminal activity." (citation modified), *abrogated in part on other grounds by Lockhart v. United States*, 577 U.S. 347 (2016)).

The Plaintiff's allegation that no crime was committed necessarily implies that the cost to remove and repair the area where the posters were

affixed would not exceed $500, taking her suspected actions out of the purview of O.C.G.A. § 16-7-23(a)(1). But whether or not the building was actually damaged to that extent is not the inquiry before the Court—instead, Sluss is entitled to qualified immunity so long as he believed or accepted as true that the damage exceeded that amount when he applied for the warrants. *See Carter*, 557 F. App'x at 907-908. The Plaintiff has not alleged that Sluss knowingly or intentionally lied about the extent of the damage done in order to swear out the search warrants at issue, nor has she even alleged that he did not believe the damage exceeded $500. *See id.* To the contrary, the Plaintiff essentially alleges that Sluss must have lied about the damage because *she* believes no damage was done. (Am. Compl. ¶¶ 11-12 ("No damage whatsoever was caused by the suspected posted of fliers.")). This unsupported conclusion does not suffice to overcome the Plaintiff's burden with respect to qualified immunity. Thus, because she has failed to establish that the warrants lacked probable cause, she has failed to establish a Fourth Amendment violation on that basis. For that reason, Sluss is entitled to qualified immunity as to the probable cause portion of the Plaintiff's Fourth Amendment challenge. *See Gates*, 884 F.3d at 1296 (noting the burden on the plaintiff to establish that qualified immunity is not appropriate by showing that the facts alleged make out a violation of a constitutional right); *Gaines*, 871 F.3d at 1208.

13

The Plaintiff's other Fourth Amendment challenge is that the warrants were unconstitutionally broad in violation of the particularity requirement. (Am. Compl. ¶¶ 33-34); (Pl.'s Resp. in Opp'n to Def. Sluss's Mot. to Dismiss, at 7-10). She contends that the warrants "do[] not limit the search in any way. The entirety of the phone is fair game . . . it actually goes to great lengths to make [the search's] scope as broad as [] is conceivably possible." (Pl.'s Resp. in Opp'n to Def. Sluss's Mot. to Dismiss, at 7-8). As Sluss points out in his reply brief, the warrants at issue here include limitations on the timeframe for the data that is sought and search categories to narrow the search to items reasonably connected to the crime of criminal damage to property in the second degree. (Warrants at 3-4, 15-16). The warrant relating to the Plaintiff's phone is limited to a roughly three-month timespan from August 2024 to November 2024. (*Id.* at 4). That warrant further states that an executing officer is specifically to look for "visual media matching specific criteria: Protests, signs, black block clothing, DTAF (Defend the Atlanta Forest) and Stop Cop City." (*Id.*). And the warrant relating to the Plaintiff's car is limited to the data contained on the car's Infotainment system for a roughly six-week timeframe and physical items from the car including "[p]osters, adhesive, brushes, buckets, black clothing, masks, and electronic devices." (*Id.* at 15). These limitations sufficiently particularize the warrants at issue in the way the Eleventh Circuit instructed in *McCall.* There, the Eleventh Circuit explained

that "in the mine run of cases . . . a time-based limitation will be both practical and protective of privacy interests." *McCall*, 84 F.4th at 1328. The Eleventh Circuit said so after acknowledging that "a subject-based limitation may sometimes be so broad as to be meaningless." *Id.* at 1327. Here, both subject-based and time-based limitations sufficiently particularize the warrants to the extent practical at the early stages of Sluss's investigation. *Id.* But even if the subject-based limitations here are overbroad, as the Plaintiff contends, the time-based limitation sufficiently tailors the scope of the searches to the extent required by the Fourth Amendment. Thus, the Plaintiff's particularity arguments do not carry her burden of establishing that Sluss is not entitled to qualified immunity here. *See Signature Pharm., Inc.*, 438 F. App'x at 744; *Gates*, 884 F.3d at 1296.

For all of these reasons, Sluss is entitled to qualified immunity as to the Plaintiff's Fourth Amendment claim. Accordingly, the Court will grant Sluss's Motion to Dismiss [Doc. 13] as to this claim.

## 2. First Amendment Claim (Count II)

In this claim, the Plaintiff contends that Sluss obtained the warrants at issue to harass her and retaliate against her for exercising her First Amendment rights with regard to protesting against Cop City. (Am. Compl. ¶¶ 36-38). Sluss argues that this claim is due to be dismissed because the existence of probable cause underlying the warrants defeats the Plaintiff's

contention that her actions were constitutionally protected. (Def. Sluss's Mot. to Dismiss, at 13-14). Sluss also contends that he is entitled to qualified immunity as to this claim. (*Id.* 17-20). The Court agrees on both points.

The Eleventh Circuit has described the general standard for stating a retaliation claim as follows: "[T]he commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (2005) (citations omitted), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). But the Supreme Court has held that a plaintiff "pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 400-03 (2019).

The Court finds that the reasoning underlying the *Nieves* decision extends to a retaliatory search claim, as both contexts implicate the same Fourth Amendment concerns. *See, e.g., id.* at 403-04; *Stanley v. Bocock*, 2025 WL 3455398, at *2-3 (4th Cir. Dec. 2, 2025) (extending *Nieves* to retaliatory search claims); *see also DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1304 (11th Cir. 2019) (extending *Nieves* to a retaliatory civil action claim). The *Nieves* decision dooms the Plaintiff's First Amendment claim because, as the

16

Court has already discussed, the search warrants at issue in this matter were supported by probable cause and, therefore, the Plaintiff's Fourth Amendment rights were not violated. In other words, regardless of any subjective motivation Sluss may have had in investigating the Plaintiff's actions and pursing the search warrants, his actions were not objectively unreasonable. This negates the third element of the *Bennett* retaliation claim standard. *Bennett*, 423 F.3d at 1250; *Nieves*, 587 U.S. at 402.

The Plaintiff argues that *Nieves* carved out an exception to the no-probable cause requirement where "a plaintiff presents objective evidence that he was [subjected to a search] when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 587 U.S. at 407. The problem for the Plaintiff is that she presents no such evidence in response to Sluss's Motion, or even allegations in her Amended Complaint, that such similarly situated individuals were not subjected to similar search warrants. The closest she comes is alleging that Atlanta Police Department officers have "[n]ever before . . . executed a search warrant for [a] personal cell phone and personal vehicle belonging to any individual . . . when that individual was suspected of nothing more than posting fliers . . . unless the subject matter of the fliers was related to the Cop City controversy." (Am. Compl. ¶ 38). This sole, conclusory allegation does not satisfy the *Nieves* "objective evidence" requirement, nor does it attempt to

identify similarly situated individuals who were not subjected to a similar search warrant. *See Nieves*, 587 U.S. at 407. Instead, the Plaintiff's allegation is that she was targeted solely because of the City's and Sluss's views on Cop City. But the *Nieves* Court explained that the similarly situated individuals exception is an objective inquiry, so "the statements and motivations of the particular arresting officer are irrelevant at this stage." *Id.* (citation modified).

For the same reason, Sluss is entitled to qualified immunity as to this claim. Since the Plaintiff has not challenged Sluss's assertion that he was acting within the scope of his discretionary warrant when he pursued the search warrants, the burden shifted to the Plaintiff to establish, as relevant, that her First Amendment rights had been violated. *See Gates*, 884 F.3d at 1296. But as just explained, the Plaintiff has not made and cannot make that showing here. *See Bennett*, 423 F.3d at 1250; *Nieves*, 587 U.S. at 402. Accordingly, Sluss's Motion to Dismiss [Doc. 13] will be granted as to the Plaintiff's First Amendment retaliation claim.

### 3. Conspiracy Claim (Count IV)

In this claim, the Plaintiff alleges that Sluss acted at the City's direction and in accordance with its "Cop City Policy," which she alleges directed officers to "arrest[] protesters under the pretext of violating pedestrian in the roadway laws." (Am. Compl. ¶¶ 42, 48). She acknowledges that, although she was not arrested, the policy "is evidence of the City's treatment of individuals holding

First Amendment protected beliefs that are not in alignment with the City's approved views. (*Id.* ¶ 42). The Plaintiff alleges that Sluss's actions in her case were approved of by the City's final policy makers, and that he and the City "jointly and in concert engaged in numerous past instances of property seizures without probable cause." (*Id.* ¶¶ 58-62). Sluss argues that the Plaintiff's conspiracy claim fails because she was not deprived of any constitutional rights. (Def. Sluss's Mot. to Dismiss, at 14-16). He also contends he is entitled to qualified immunity as to this claim. (*Id.* at 17-20).

The elements of a claim for conspiracy to deprive an individual of her constitutional rights or privileges are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Denny v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) (citation modified). Thus, where a plaintiff's substantive claim fails on the merits, the conspiracy claim necessarily fails as well, since the plaintiff "would not have been deprived of any rights or privilege by the [d]efendants' allegedly wrongful acts." *Id.*

Again, the Court agrees with Sluss. The Plaintiff's conspiracy claim is premised on her Fourth Amendment claim—that her property was seized and

19

searched without a valid warrant. That is the core constitutional right that the Plaintiff alleges Sluss (and the City) conspired to violate. (*See* Am. Compl. ¶¶ 49-51). But because the Court found that claim failed on the merits, the Plaintiff necessarily cannot state a claim for conspiracy to violate her Fourth Amendment rights. *Denny*, 247 F.3d at 1190. Sluss is entitled to qualified immunity on this claim for the same reason—the Plaintiff has not challenged Sluss's assertion that he was acting within the scope of his discretionary authority when he applied for the warrants, and she has not stated a viable claim for a constitutional violation arising out of the procurement and execution of those warrants. *See Gates*, 884 F.3d at 1297. Accordingly, the Court will grant Sluss's Motion to Dismiss [Doc. 13] as to the conspiracy claim, too.

### B.  City of Atlanta's Motion to Dismiss [Doc. 12]

In Count III, the Plaintiff asserts a claim for municipal liability against the City, alleging that "there was a decision by a final policymaker to seize and search Plaintiff's property or to conduct searches and seizures in cases such as Plaintiff's—namely in cases related to the Cop City controversy." (Am. Compl. ¶ 40). As previously discussed, the Plaintiff alleges that the City routinely arrests protesters for violating the pedestrian in the roadway statute as a means of tamping down Stop Cop City protests. (*Id.* ¶¶ 42-46). She further alleges that "the City—if not deliberately promoting this policy—is at the very

least deliberately indifferent to it." (*Id.* ¶ 42). And, she alleges that Sluss acted at the direction of a final policy maker of the City, who "encouraged and approved [his] actions." (*Id.* ¶ 47). In Count IV, the Plaintiff alleges that the City is liable for failing to train its officers to respect citizens' First Amendment rights, and that failure to train results in the routine arrest of Cop City protestors. (*Id.* ¶¶ 49-59).

The City argues that the Plaintiff's policymaker claim is due to be dismissed because the Plaintiff fails to identify who the alleged policymaker is in Count III and because Sluss did not possess final authority to establish municipal liability. (Def. City's Mot. to Dismiss, at 7-14). Additionally, the City contends that the Plaintiff's claims fail under both the policymaker theory and the failure to train theory because Sluss's actions in procuring the search warrants were lawful. (*Id.* at 9-12, 14-15). And as to the failure to train claim in Count IV, the City asserts that the cases identified by the Plaintiff in support of a purported policy of violating the rights of individuals opposing Cop City are not factually analogous because those cases involved arrests for violations of the pedestrian in the roadway statute and therefore fail to establish a policy applicable to her case. (*Id.* at 15-18).

Under *Monell*, a local government body is liable under § 1983 when the execution of its policy or custom constitutes the "moving force" that inflicts injury upon an individual in violation of her constitutional rights. *Monell v.*

*Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). To state a claim for § 1983 liability against a municipality or other local government entity, a plaintiff must allege plausible facts showing (1) that her constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to her constitutional rights, and (3) that the custom or policy caused his constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

The Supreme Court has also held that, in "limited circumstances," a § 1983 claim can arise from a municipality's failure to train or supervise its police officers. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). These limited circumstances occur:

> [O]nly where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*Id.* at 388-89 (citations omitted). The "deliberate indifference" standard sets a high bar to § 1983 liability. It requires a plaintiff to present evidence that the municipality knew of a need to train or supervise in a particular area but made a deliberate choice not to take corrective action. *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). The need for training is obvious when there is a pattern of constitutional violations by municipal employees or when the failure to train is likely to result in a constitutional violation. *See id.* at

1351-52; *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397-98 (11th Cir. 1994).

Under either theory, the Plaintiff's *Monell* claims against the City fail for the same reason her claims against Sluss failed—she has failed to state a viable claim for her underlying Fourth Amendment violation. The City could not have been deliberately indifferent to the Plaintiff's constitutional rights if those rights were not violated in the first place. *McDowell* at 1289 (noting the first prong of a *Monell* claim is a showing that the plaintiff's constitutional rights were violated); *City of Canton, Ohio*, 489 U.S. at 385 ("It is only when the execution of the government's policy or custom . . . *inflicts the injury* that the municipality may be held liable under § 1983." (emphasis added) (citation modified)). And as to the failure to train claim, even if the Plaintiff had established a constitutional violation, her cited cases involving arrests of protestors do not exemplify a pattern of constitutional violations with regard to search and seizure practices in cases involving protestors. *Gold*, 151 F.3d at 1350 (explaining that the plaintiff must present evidence that the municipality knew of a need to train "in a particular area"); *See Baker v. City of Atlanta*, 662 F. Supp. 3d 1308, 1319 (N.D. Ga. 2023) ("That both the prior incident and this case involve citizens exercising their First Amendment rights is not sufficient to transfer the need for training in one specific area (a citizen's right to film police) to the need for training in a distinct area (a citizen's right to peacefully protest).").

Finally, the Plaintiff asserts the same conspiracy claim in Count V against the City as she asserted against Sluss. But without a surviving substantive claim for a constitutional violation, that claim necessarily fails against the City, too. *Denny*, 247 F.3d at 1190. For all of these reasons, the Court will grant the City's Motion to Dismiss [Doc. 12].

### C. Damages

Because the Court is dismissing the entirety of the Plaintiff's claims, her claims for damages and attorney's fees necessarily fail as well. 42 U.S.C. § 1988(b); *see Wright v. Sheppard*, 919 F.2d 665, 671 (11th Cir. 1990).

## IV. Conclusion

For the foregoing reasons, the Defendant City of Atlanta's Motion to Dismiss [Doc. 12] and the Defendant Ronald Sluss's Motion to Dismiss [Doc. 13] are GRANTED. The Clerk is directed to enter judgment in favor of the Defendants and to close the case.

SO ORDERED, this ____18th____ day of December, 2025.

THOMAS W. THRASH, JR.
United States District Judge

24